UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Dashawn williams

Write the full name of each plaintiff.

26 CV 9097

(Include case number if one has been assigned)

-against-

Correction Department
city of New york

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☑ Yes ☐ No

RECEIVED
SDNY PRO SE OFFICE
2026 OCT 15 AM 10: 55

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☑ Violation of my federal constitutional rights Eighth Amendment

☑ Other: fourteenth Amendment due process

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

| First Name | Middle Initial | Last Name |
|---|---|---|
| Dashawn | C | williams |

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

2412502055

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

09-09 Hazen st East Elmhusst Ny 11370

Current Place of Detention

Institutional Address

| County, City | State | Zip Code |
|---|---|---|
| Queens | Ny | 11370 |

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☑ Pretrial detainee

☐ Civilly committed detainee

☐ Immigration detainee

☐ Convicted and sentenced prisoner

☐ Other: ______

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1: Belfort 20776

First Name / Last Name / Shield #

correction officer

Current Job Title (or other identifying information)

OBCC 1600 Hazen st East Elmhurst

Current Work Address

Queens Ny 11370

County, City / State / Zip Code

Defendant 2:

First Name / Last Name / Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City / State / Zip Code

Defendant 3:

First Name / Last Name / Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City / State / Zip Code

Defendant 4:

First Name / Last Name / Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City / State / Zip Code

## V. STATEMENT OF CLAIM

Place(s) of occurrence: OBCC 16-00 Hazen St 4 South west 41 cell

Date(s) of occurrence: 4\23/26

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

The NAture of the claim is for personal injuries sustained By the claimant Dashawn williams, 2412502055, including Damages for personal injuries Due to Negligence By the city of New york Department of corrections their officers, agents, servants, and/or employees, of the New york Department of corrections and other Departments, who were negligent in failing to properly Supervise and/or take Reasonable precautions for the Safety of claimant and/or allowing the claimant to be Assaulted by inmates Due to lack of proper Supervision and training which allowed the claimant to Be caused Serious injuries set forth Below. The claim is Also Due to, Among other things Negligence in the hiring, training Supervision and Retaining of incompetent, inefficient and unfit correction officers, negligence in the training and instruction and Discipline of its

correction officers and inmates negligence in monitoring, supervision, management and control of its correction officers and inmates, All of which Resulted in severe and perminate personal injuries to the claimant as more fully Described Below. ADDitionally, the city of newyork is responsible for the actions of its employees, agents and servants under, Among other things, The theory of RespondDent superior. → see more

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

My Broken RiBS, I seen medical and they X ray and after told me my RiBS had to heel on it's own and gave me pain pills

## VI. RELIEF

State briefly what money damages or other relief you want the court to order.

1,000,000,00, I certify that all information contained in this notice is true and correct to the best of my Knowledge and belief.

The claim Arose on or About 4/23/2026 When claimant was caused to be injured Due to The Negligence, carelessness and Recklessness of the city of New york, their agents, servants and/or Employees, of the city of New york Department of corrections, and other Departments in its ownerships, operation, Sercurity, Supervision and control of OBCC 1600 HAZen Street, on Rikers Island, Bronx, New york and the aforesaid inmates including its inmates Herein. The claimant was caused tobe injured When fellow inmates were Allowed to attack/Punch/strike/Strangle/stomp the claimant, all Due to the lack of proper Supervision, care, custody and control of the claimant and the fellow inmetes the city of New york, Their officers, agents, servants and/or Employees, of the New york city Department of corrections, their

correction officers, Agents, servants and/or Employees. The claimant was Assaulted By one or more inmates, Additionally, the aforesaid Entities were Negligent in allowing the inmates inside the Aforementioned area to remain without Adequate Supervision and security in light of the fact that the city of New york, its agents, servents, officers and/or Employees, in the Department of corrections and other Departments were aware of the Dangerous propensity of the fellow inmates, while the claimant was being assaulted there were no correction officers, correction officers present to stop the claimant from Being assaulted and/or the correction officers present to stop the claimant from Being assaulted or Bring the assault to A prompt End. The claimant Relied upon Respondent, to His Detriment, to prevent incidents Such as this.

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

10\5/26
Dated

Dashawn williams
Plaintiff's Signature

Dashawn
First Name

C
Middle Initial

williams
Last Name

09-09 Hazen st East Elmhurst Ny, 11370
Prison Address

Queens
County, City

Ny
State

11370
Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: 10\5/26

OCA Official Form No.: 960

# AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA

**[This form has been approved by the New York State Department of Health]**

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| Dashawn williams | 02-04-1994 | 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 |
| Patient Address: 09-09 Hazen St East Elmhurst Ny, 11370 | | |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL** and **DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.
2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.
3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.
4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.
5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.
6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

7. Name and address of health provider or entity to release this information:
United States District court Southern District 500 pearl st, Ny, Ny 10007

8. Name and address of person(s) or category of person to whom this information will be sent:
United states District court Southern District 500 pearl st, Ny, Ny 10007

9(a). Specific information to be released:

- ☑ Medical Record from (insert date) __________ to (insert date) __________
- ☑ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
- ☐ Other: __________

Include: (*Indicate by Initialing*)

- D.W **Alcohol/Drug Treatment**
- D.W **Mental Health Information**
- D.W **HIV-Related Information**

**Authorization to Discuss Health Information**

(b) ☑ By initialing here D.W (Initials) I authorize __________ (Name of individual health care provider) to discuss my health information with my attorney, or a governmental agency, listed here:
United states District court Southern District of New york
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: | 11. Date or event on which this authorization will expire: |
|---|---|
| ☑ At request of individual<br>☑ Other: | until the end of litigation |
| **12.** If not the patient, name of person signing form: Dashawn williams | **13.** Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

Dashawn williams
Signature of patient or representative authorized by law.

Date: 10 \ 5 / 2026

* **Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.**

Caution
As of: February 14, 2026 4:17 PM Z

# People ex rel. Burse v. Schiraldi

Supreme Court of New York, New York County

December 22, 2021, Decided

Index No. 21-53252

**Reporter**
74 Misc. 3d 927 *; 160 N.Y.S.3d 829 **; 2021 N.Y. Misc. LEXIS 6557 ***; 2021 NY Slip Op 21351 ****; 2021 WL 6069159

**[****1]** The People of the State of New York ex rel. Eric M. Burse, Esq., on Behalf of Relator G, Petitioner, v Vincent Schiraldi, Commissioner, New York City, Department of Correction, Respondent.

**Subsequent History:** As corrected through Wednesday, May 4, 2022.

Reported at *State v Schiraldi, 2021 NYLJ LEXIS 1226 (Dec. 22, 2021)*

## Core Terms

***detainee***, leader, fight, intake, deliberate indifference, housing unit, prison official, monitor's, food, staff, pretrial ***detainee***, violence, inmate, night, prong, recreation, medical care, deprive, island, prison, bail, constitutional violation, video surveillance, unreasonable risk, prison ***conditions***, due process, confinement, corroborate, incarcerate, footage

## Case Summary

### Overview

HOLDINGS: [1]-Department of Corrections (DOC) was deliberately indifferent to an unacceptable risk of harm to pretrial ***detainee***'s well-being; DOC failed to protect him from constant physical violence and the implicit threat of violence engendered by DOC ceding control of the housing units to ***detainees***. DOC also failed to provide the ***detainee*** with adequate food and medical care on an ongoing basis and failed to take reasonable care to mitigate the excessive risks to the ***detainee***. DOC did not meet its due process obligations to the ***detainee***, and as a result, the court remedied the constitutional violation of the *Fifth*, *Fourteenth*, and Eighth Amendments by granting his release.

### Outcome

Writ of ***habeas corpus*** sustained, ***detainee*** ordered released.

**Counsel:** **[***1]** *New York County Defender Services* (*Eric M. Burse* of counsel) for petitioner.

*NYC Department of Correction* (*Benjamin Lee* of counsel) for respondent.

*Cyrus R. Vance, Jr., District Attorney* (*Daniel Makofsky* of counsel), interested party.

**Judges:** April A. Newbauer, J.

**Opinion by:** April A. Newbauer

## Opinion

**[*928] [**831]** April A. Newbauer, J.

In this writ of ***habeas corpus***, Relator G[1] challenges the legality of his pretrial detention at Rikers Island. Relator G's sole claim is that his pretrial detention is unlawful under the *Due Process Clause of the Fourteenth Amendment to the United States Constitution*. This writ was filed in the wake of a motion to seek relief under a federal consent decree in *Nunez v City of New York* (US Dist Ct, SD NY, No. 11 Civ. 5845[LTS][JCF]).[2] This writ not only corroborated the independent **[****2]** monitor's general findings in *Nunez*, but gave them a specific human face. Based on the credible testimony and overwhelming supporting video evidence of deliberate indifference, the writ is sustained and the application to release Relator G is granted. The court makes the following findings:

**[*929]**

Procedural History

Relator G, having been charged with burglary in the first degree, was committed to the custody of the New York City Department of Correction (DOC) at his New York County Criminal Court arraignment on June **[***2]** 21, 2021. Relator G filed the instant writ on October 4, 2021, pursuant to *CPLR 7002 (a)* and *(b) (5)*. In the petition, Relator G argued that his continued pretrial detention violated both the *New York State* and *Federal Due Process Clauses*. In the absence of a finding of a constitutional violation, Relator G asked the court to hold a bail hearing. Following a prehearing conference, Relator G withdrew his New York State constitutional claim and his request for a bail hearing. As a result, the sole claim at issue is whether Relator G's pretrial detention is unlawful under the United States Constitution.

Pursuant to *CPLR 7009*, and because there were material issues of fact raised by the paper submissions, the court held an evidentiary hearing on the writ. At the hearing, Relator G testified on his own behalf and was cross-examined by DOC counsel. Based on its status as an interested party, the Manhattan District Attorney's Office also participated in the hearing and made legal arguments. (*See* *CPLR 7009 [a] [3]*.) However, the court denied the District Attorney's request to cross-examine witnesses as the sole issue raised by Relator G concerned prison ***conditions*** at Rikers Island and the deliberate indifference of DOC officials.

On Friday, November 5, 2021, at **[***3]** the close of petitioner's case, DOC announced its intention to call witnesses. The court then granted the petitioner's application to **[**832]** have Relator G released on electronic monitoring pending a decision on the writ. (*See* *CPLR 7009 [e]*.) The court found that Relator G established a substantial likelihood of success on the merits and a significant threat of retaliatory violence due to the filing of this writ. (*See* *Strachan v Soloff, 157 AD2d 122, 554 NYS2d 565 [1st Dept 1990]*; *see also* *Mapp v Reno, 241 F3d 221 [2d Cir 2001]* [noting that federal courts have inherent authority to admit individuals to bail pending disposition of the

---

[1] The court has shielded the petitioner's name in response to a request to anonymize this written decision. Because of the threat of violence to Relator G due to the filing of this writ and the court's perception of the respondent as unable to prevent violence at this time, the court refers to the petitioner as "Relator G."

[2] On August 18, 2011, a class of prisoners filed a lawsuit against the New York City Department of Correction under *42 USC § 1983* for cruel and unusual punishment. On October 21, 2015, Judge Laura Taylor Swain of the Southern District of New York approved a consent settlement with the court enforcing implementation of the terms of the settlement. The consent settlement included provisions prohibiting certain types of force and mandating new reporting procedures for all use of force events. As part of the consent settlement, the parties also agreed to an independent court-appointed monitor who would write progress reports every four months. Since implementation began, the monitor has repeatedly reported that the City has established a record of noncompliance with the most fundamental goals of the consent settlement. The case remains ongoing.

merits of the habeas petition provided that petitioner raises "substantial" claims and shows that "extraordinary circumstances" exist that make the grant of bail necessary].)

Facts

Throughout his testimony, Relator G described squalid ***conditions***, rampant violence among and to ***detainees***, and a lack of **[*930]** essential services such as food and water; Relator G ascribed these ***conditions*** mostly to a lack of supervision of other ***detainees*** who bullied and commandeered resources. DOC admitted Relator G to an intake unit on Rikers Island on June 21, 2021. Relator G testified that he was held in the intake unit with about 15 other individuals for three days—well past the 24-hour time frame in which **[***4]** inmates are required to be assigned to a housing unit. (*See* Second Remedial Order in *Nunez* at 3 [Sept. 29, 2021].) This small intake unit had one bathroom and no mattresses or blankets. After three days in the intake unit, correction officers (hereinafter COs) transferred Relator G to a 50-person housing unit at the Otis Bantum Correction Center (OBCC). While at OBCC, three individuals physically assaulted Relator G, after which he was taken to a segregation unit for three days and then to a 50-person **[****3]** housing unit at the George R. Vierno Center (GRVC). At this unit, Relator G once again was assaulted, this time by as many as four ***detainees***, who attacked him with sharp objects fashioned from plastic and metal.[3] Relator G received the sum total of two ibuprofens from medical staff to treat injuries from the assault, which included a black eye and bruised ribs.

After the second assault, DOC officials moved Relator G to the intake area at GRVC, where he stayed for 11 days. At the GRVC intake, Relator G was by himself in a small cell with no blankets or mattresses. He could not leave the cell. Relator G testified that he attempted to get the attention of DOC officials to move him out **[***5]** of intake but that they could not do so because of staffing shortages. Relator G testified that during both of his stays in intake units at Rikers, there were days in which he received no food at all. On the days he did receive food, he received no more than one meal per day, which typically consisted of a single bowl of cereal and several scoops of jelly. After this 11-day stint in intake, DOC transferred Relator G to unit 5B, another 50-person housing unit at GRVC.

During his testimony, Relator G depicted a state of affairs at Rikers where a skeleton staff of COs ceded control of basic jail operations to other selected incarcerated individuals, whom **[*931]** Relator G referred to as "the leaders." Relator G testified that the leaders at the various housing units controlled other ***detainees***' access to food, with the leader receiving meals first and then rationing out the remaining food to **[**833]** the other ***detainees***. The leaders would also control the supply of water in the cell block by directing COs to place the unit's water jug in the cell of a ***detainee*** loyal to the leader, i.e., a sidekick. Relator G also testified that he had to request permission of the leader in his cellblock to make phone calls, **[***6]** furthering an atmosphere of fear and intimidation.

Relator G offered uncontradicted testimony that he received no recreation time for months. After the writ was filed, for the first time, a recreation team appeared in cellblock 5B. However, Relator G testified, and video surveillance shows, a CO attempting to take the inmates of 5B out of the housing unit to "the yard" for recreational time, only to be overruled by the leader. Relator G testified that he overhead the leader arguing with the recreation COs, with the leader saying that it was "too early" for recreation and that they should come back later. The video supports this testimony as the leader is shown waving and gesturing to the recreation COs. They then leave the unit.

Relator G also testified to a "fight night" incident on October 19, 2021, whereby the leader of 5B forced other inmates to fight each other inside a cell while the rest of the inmates in the housing unit crowded around and cheered. The cells in this unit have concrete floors and metal bedframes and toilets. After witnessing two fights, the leader tapped Relator G on the shoulder, indicating that he was being selected for the next fight. The leader then had Relator **[***7]** G fight another inmate with full force until the leader gave permission to stop. The leader then brought Relator G to his cell, where Relator G received cigarettes and extra food as a reward for fighting. Relator G

---

[3] Relator G introduced DOC video surveillance of this incident. The video shows that before the assault, one of the attackers covered the pantry camera with a towel, obscuring the video footage for approximately two hours. When the video resumes, it shows the assault spilling out of the pantry and into a hallway area. At this point, a female officer is seen with a can of pepper spray pointing and spraying it at multiple ***detainees*** who are wielding weapons and throwing large objects at her and Relator G.

testified that COs within the housing unit had full knowledge of what was [****4] happening during the fight night. Relator G testified—and video surveillance corroborates—that after the first two fights, a female CO approached the leader to tell him to "quiet things down" and make the violence appear less obvious to COs stationed where this could be observed on the monitors. The video surveillance also shows one CO watching several of the fights from an elevated position on the second tier of the housing unit. At no point did any correction official attempt to break up the fights.

**[*932]** During cross-examination, DOC counsel repeatedly asked why Relator G never reported any incidents of violence or poor ***conditions*** to DOC staff. Relator G testified that he did not submit a complaint to DOC staff because he had heard about instances of retaliatory violence against those who filed complaints, including an inmate who was jumped after complaining about the leader not allowing him to use the **[***8]** shower. Relator G testified that he felt compelled to participate in the fight night because he feared retaliatory violence if he refused.

The court finds Relator G's testimony credible for several reasons. First, DOC's video surveillance footage corroborates most of Relator G's allegations. Relator G's testimony about the fight night incident perfectly matches the video footage from that night. Similarly, Relator G's claim about the leader overruling a CO about recreational time can also clearly be seen in the video footage. Additionally, the federal monitor's reports in *Nunez* further corroborate much of Relator G's testimony. The monitor's reports detail how Relator G's lengthy periods in intake are part of a larger systemic pattern in which delays in transferring ***detainees*** out of intake causes delays in providing medical services to ***detainees***. The monitor also notes the lack of mandatory recreation, and that food and other basic services are not routinely provided to ***detainees*** in intake, which is consistent with Relator G's testimony of **[**834]** lack of food and medical treatment while in intake.

In addition to this corroborating evidence, the court notes that DOC failed to present any evidence **[***9]** that might contradict the major allegations raised by Relator G in his testimony. DOC chose to call only one witness, CO Abdul Khlek, to testify during the hearing. Officer Khlek's testimony was limited to ***subjects*** of limited relevance to Relator G's claims, such as DOC policies regarding the securing of cell doors at night and viewing of surveillance footage. The petition does not challenge DOC's stated procedures, but rather the actual practices that have come to pass at this facility. While Officer Khlek is regularly stationed in unit 5B, he was off duty during the fight night incident. He had no personal knowledge of any of the violent incidents described by Relator G and captured by the video surveillance footage, or anything to offer about the intake units. DOC had every opportunity to call COs who did have personal knowledge of these incidents and to rebut the claims made by Relator G, but elected not to. As indicated below, the silence spoke volumes.

**[*933]** Law

The US Constitution "does not mandate comfortable prisons." (*Rhodes v Chapman, 452 US 337, 349, 101 S Ct 2392, 69 L Ed 2d 59 [1981]*.) However, it does not permit ***inhumane*** prisons either. (*Farmer v Brennan, 511 US 825, 832, 114 S Ct 1970, 128 L Ed 2d 811 [1994]*.) Specifically, the Supreme Court has interpreted the *Eighth Amendment's* prohibition of "cruel and unusual punishment" as imposing **[***10]** duties on prison officials to provide humane ***conditions*** of confinement, ensure that inmates receive adequate food and medical care, and take reasonable measures to guarantee the safety of inmates. (*See e.g. Brown v Plata, 563 US 493, 508, 131 S Ct 1910, 179 L Ed 2d 969 [2011]*; *Farmer, 511 US at 832*; *Hudson v Palmer, 468 US 517, 526-527, 104 S Ct 3194, 82 L Ed 2d 393 [1984]*.) Additionally, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. (*Farmer, 511 US at 833*.) While these decisions concern the rights **[****5]** of convicted prisoners under the *Eighth Amendment*, the Supreme Court has held that the *Due Process Clauses of the Fifth* and *Fourteenth Amendments* provide at least as great protection to pretrial ***detainees***. (*See Kingsley v Hendrickson, 576 US 389, 135 S Ct 2466, 192 L Ed 2d 416 [2015]*; *City of Revere v Massachusetts Gen. Hospital, 463 US 239, 103 S Ct 2979, 77 L Ed 2d 605 [1983]*.)

To establish a *Due Process Clause* claim for unconstitutional ***conditions*** of confinement, a pretrial ***detainee*** must show that prison officials acted with "deliberate indifference" to the challenged ***conditions***. (*See Darnell v Pineiro, 849 F3d 17, 29 [2d Cir 2017]*.) A pretrial ***detainee*** must satisfy two prongs to establish a deliberate indifference claim: an "objective prong" showing that the challenged ***conditions*** were sufficiently serious to constitute objective

deprivations of the right to due process, and a "*mens rea* prong" showing that the officer acted with at least deliberate indifference to the challenged ***conditions***. (*Id.*) To establish an objective deprivation, a pretrial ***detainee*** must show that the prison ***conditions*** pose an unreasonable risk of **[***11]** serious damage to physical and mental health. There is no "static test" for determining whether a deprivation is sufficiently serious. (*Rhodes v Chapman, 452 US 337, 346, 101 S Ct 2392, 69 L Ed 2d 59 [1981]* [internal quotation marks omitted].) Instead, the challenged ***conditions*** must be evaluated in light of contemporary standards of decency. (*Id.*)

As to the mens rea prong, the federal circuit courts differ on whether prison officials must have actual knowledge of the **[**835]** ***conditions*** that pose an unreasonable risk or whether it is sufficient for a petitioner to show that prison officials should have known and were reckless with respect to the ***conditions*** that **[*934]** posed an excessive risk to health or safety. (*Compare Darnell, with Whitney v City of St. Louis, 887 F3d 857 [8th Cir 2018]*.) Nonetheless, if prison officials cannot meet their due process obligations to ***detainees***, then courts, where appropriate, must remedy the constitutional violation by releasing ***detainees*** from prison. (*See Brown v Plata, 563 US 493, 511, 131 S Ct 1910, 179 L Ed 2d 969 [2011]*.)

Under either applicable standard, Relator G has met his burden. Whether prison officials must have actual knowledge is not at issue here because there is no doubt that DOC officials had actual knowledge of the threats to Relator G's health and safety. As discussed above, COs in Relator G's housing unit knew that inmates were being forced to fight each other yet did nothing to intervene. Furthermore, **[***12]** the Office of the Monitor in *Nunez v City of New York* has repeatedly detailed the extent of the current crisis at Rikers and provided recommendations for how DOC should address these problems so that ***detainees*** like Relator G do not suffer unreasonable risks of serious harm. The monitor's office described Rikers Island as having a "pervasive high level of disorder and chaos" stemming from the culmination of decades of mismanagement and dysfunctional staffing practices. (Monitor's Report in *Nunez* at 1-2 [Aug. 24, 2021].) These systemic issues have resulted in the steady increase in serious use of force incidents, significant delays in transferring ***detainees*** out of intake, the deterioration of basic security protocols, and the denial of basic services. (*Id.* at 2-3.) "This state of seriously compromised safety has spiraled to a point at which, on a daily basis, there is a manifest risk of serious harm to both ***detainees*** and staff." (*Id.* at 4.) In response to the monitor's findings, Judge Laura Taylor Swain of the Southern District of New York ordered DOC to implement the monitor's recommendations to address current lapses in security management. (Second Remedial Order in *Nunez* [Sept. 29, 2021].) **[***13]**

While the monitor's office has noted some recent positive actions to address the mass absenteeism of correction officers, the monitor maintains that the risk of harm to incarcerated persons in the daily operations of the jails remains high. (*See* Monitor's Report in *Nunez* at 1-2 [Nov. 17, 2021].) On October 19, 2021—the day of the fight night incident—there were 1,467 uniformed DOC staff out on sick leave, 31 COs who did not report for a shift without providing **[****6]** a reason, and 73 reported instances of a housing unit having no or insufficient staff. (*Id.*, appendix B.) The rate of staff absenteeism remains high as the **[*935]** number of COs who did not report for a shift without providing a reason increased from 37 people on September 23rd to 39 people on November 3rd. (*Id.*, appendix B.) DOC officials have also continued to fail to provide adequate medical care to ***detainees*** on Rikers. In September 2021 alone, DOC reported more than 8,300 instances in which incarcerated people were not produced for scheduled medical services (NYC Department of Correction, DOC September 2021 Medical Non-Production Report, available at https://www1.nyc.gov/site/doc/about/monthly-medical-reports.page). Earlier this month, Judge Elizabeth Taylor of the **[***14]** Supreme Court, Bronx County ordered that DOC must ensure that ***detainees*** can go to an onsite clinic at least five days a week and within 24 hours after a visit request. (*Matter of Agnew v New York City Dept. of Corr., 2021 NY Misc LEXIS 6134, Sup Ct, Bronx County, Dec. 6, 2021, index No. 813431/2021E*.)

DOC acknowledges the current staffing crisis at Rikers Island but denies that **[**836]** prison officials have been deliberately indifferent to Relator G's risk of harm. DOC maintains that it has taken several short and long-term actions to improve ***conditions*** at Rikers. These measures include revising sick leave policies to reduce absenteeism and recruiting former DOC staff to increase the number of available staff. Furthermore, DOC notes that overcrowding is beginning to improve as 350-400 individuals are expected to be released from Rikers following the Governor's "Less is More Act." (*See* Governor's Approval Mem approving 2021 NY Senate Bill S1144A,

enacted as L 2021, ch 427.) In light of these actions, DOC asserts that it has not committed a constitutional violation as it is taking reasonable care to mitigate the risk of harm at Rikers Island.

Furthermore, DOC claims that Relator G's injuries were not sufficiently serious to constitute an **[***15]** objective deprivation. DOC points to the fact that neither Relator G, nor any of the other ***detainees*** in his housing unit, suffered any serious injuries that required medical attention during the fight night incident. DOC also argues that Relator G's diagnoses of anxiety, ADHD, and moderate drug dependency did not constitute serious or life-threatening mental health ***conditions***, such that any failure to provide medication did not constitute an objective deprivation. Finally, DOC argues that the leader of the housing unit merely "bullied" Relator G by denying him food and water and forcing him to engage in the fight night incident, and that such bullying is not sufficiently serious to form the basis of a successful deliberate indifference claim.

**[*936]** To put it bluntly, this court disagrees. Based on the evidence presented, the court concludes that DOC was deliberately indifferent to an unacceptable risk of harm to Relator G's well-being. Relator G has conclusively established that DOC failed to act—and continues to fail to act—with reasonable care to mitigate unreasonable risks to his health and safety that were known to DOC. Specifically, DOC failed to protect Relator G from constant physical violence **[***16]** and the implicit threat of violence engendered by DOC ceding control of the housing units to ***detainees***. While Relator G readily acknowledged on cross-examination that he was only mildly scraped up when forced to fight by the leader, this is not a defense when individuals who have no other recreation are then compelled to go at one another, unsupervised, in an enclosed area consisting entirely of concrete and metal. Further, aside from the control by the leaders, the court finds that DOC failed to provide Relator G with adequate food and medical care on an ongoing basis, particularly within the intake units. These ***conditions*** of confinement are sufficiently serious to pose a risk of serious damage to Relator G's physical and mental soundness. **[****7]** Furthermore, DOC officials knew about these ***conditions*** and failed to take reasonable care to mitigate the excessive risks to Relator G's well-being.

Additionally, although not addressing the main claim, Dr. Ronald Paynter testified that in his opinion, Relator G received inadequate medical care during his detainment at Rikers. Dr. Paynter diagnosed Relator G as suffering from anxiety, ADHD, and moderate drug dependency. Upon arriving at Rikers, **[***17]** Relator G had a health intake appointment where he was prescribed a two-week course of medication to help with drug withdrawal. However, Relator G only received one dose that day and never received any other doses of the withdrawal medication. Relator G also testified that he never received any additional mental health medication throughout his time at Rikers. Relator G also testified that after testing positive for COVID-19, he was removed to another housing area for only two days and returned to the same housing unit without any explanation. **[**837]** While these claims of insufficient medical care would not be sufficient in and of themselves to sustain the writ, Relator G's testimony fits the overall pattern of DOC failing to provide adequate medical care to ***detainees*** on Rikers Island. (*See* *Matter of Agnew v New York City Dept. of Corr., Sup Ct, Bronx County, Dec. 6, 2021, index No. 813431/2021E, 2021 NY Misc LEXIS 6134.)*

**[*937]** DOC points out that two courts of coordinate jurisdiction have recently dismissed writs based on the current ***conditions*** at Rikers (*People ex rel. Belkin v Schrialdi*, 2021 WL 7278945 [Sup Ct, Bronx County 2021]; *People ex rel. Rodriguez v Schiraldi, 2021 NY Slip Op 32976[U] [Sup Ct, NY County 2021]*). **[***18]** In denying the respective habeas writs, both courts found that the petitioners failed to establish deliberate indifference. The case at hand differs markedly from these two decisions. First, the petitioner in *Rodriguez* mainly challenged his bail ***conditions*** rather than the actual jail ***conditions*** at Rikers. Second, unlike the petitioner in *Belkin*, Relator G's claims of horrific personal treatment were neither "exaggerated" nor "fabricated." (*Belkin*, 2021 WL 7278945, *2.) As discussed above, DOC's video surveillance and the *Nunez* monitor's reports largely corroborate Relator G's claims of violence and inadequate medical care. Neither court actually held a fact-finding hearing. No similar findings of fact were made in *Rodriguez* or *Belkin*.

In *Belkin*, the court of the Supreme Court, Bronx County, acknowledged that ***conditions*** at Rikers are "deplorable" and "deadly serious." (*Id.* at *1.) Nonetheless, the court dismissed the writ indicating that the petitioner's claim fell short of meeting the deliberate indifference standard in part because "there is no proof that these ***conditions*** affect

relator in any way different from any other [***19] ***detainee***." (*Id.*) To this court, it is not at all clear why a habeas petitioner would need to show that they have suffered an injury that is unique as compared to other ***detainees***. As discussed above, the deliberate indifference standard has two prongs, neither of which requires a showing of unique injury. In fact, reading in this type of requirement would mean that habeas petitioners would be less likely to prevail as overall prison ***conditions*** deteriorate as a petitioner will likely experience some unacceptable risk of harm that is at least partially connected to the risks that all ***detainees*** within the same correctional facility might face. Such a perverse outcome undoubtedly runs contrary to the due process protections afforded to pretrial ***detainees***, as well as the Eighth Amendment's prohibition against cruel and unusual punishment.

DOC also objects to release in this case because it fears that granting Relator G's writ application will open the floodgates to challenges from other ***detainees*** who experience similar ***conditions*** at Rikers, resulting in an unwelcomed intrusion into DOC's day-to-day operations. Yet courts cannot shrink from [*938] the obligation to rectify constitutional violations against incarcerated [***20] individuals "simply because a remedy would involve intrusion into the realm of [****8] prison administration." (Brown v Plata, 563 US 493, 511, 131 S Ct 1910, 179 L Ed 2d 969 [2011]; *see also* People ex rel. Stoughton v Brann, 67 Misc 3d 629, 122 NYS3d 866 [2020] [granting the temporary release of 18 pretrial ***detainees*** at Rikers as a result of the COVID-19 pandemic].) Moreover, the same or similar relief is being sought in two pending class actions, but here Relator G has proved his individual case.

In short, DOC did not meet its due process obligations to Relator G, and as a result, the court must remedy the constitutional violation by granting Relator G's [**838] release. This is not an outcome without consequence. The respondent *and his superior* utterly failed the public as well as this relator by ignoring the looming threat of a crisis at Rikers Island, by delaying emergency measures as staff shortages increased, and by not adopting an "all hands on deck" approach to this entirely foreseeable crisis. Respondent and his superior's failures are well documented in the latest report of the *Nunez* monitor as well as the recent decision in Matter of Agnew v New York City Dept. of Corr., 2021 NY Misc LEXIS 6134 (Sup Ct, Bronx County, Dec. 6, 2021, index No. 813431/2021E). all men.

Management is a process of planning and organizing to address foreseeable crises, not only of controlling [***21] immediate crises. In this case, the lack of management by respondent, and presumably by his superior, was tantamount to deliberate indifference. Not all the CO staff were individually deliberately indifferent, but they were placed in an untenable position, as the video of the lone officer trying to stave off an attack involving four ***detainees*** with a single can of pepper spray aptly illustrates. As a result of glaringly obvious mismanagement, Relator G has not only suffered at the hands of violence-prone ***detainees***, but also lacked adequate food, exercise, and health services.

adequate bedding when petitioner [illegible]
fear for his health and safety in C-74

Important to the larger understanding of this case, respondent's deliberate indifference has obligated this court to release a ***detainee*** who is alleged to have committed a violent felony offense, for which the Manhattan District Attorney's Office requested that bail be posted. Moreover, this court had set bail, finding that bail was the least restrictive means to ensure Relator G's return to court under the factors enumerated in CPL 510.30.

I was subjecting and petitioner constantly

[*939] For the foregoing reasons, the court sustains this writ of ***habeas corpus*** and orders Relator G's release. [***22]

the gate, cut, stabbed or otherwise

End of Document

that they will send other detainees to
with gangbangers who threaten officers
I'm a lone gang banger housed
injuries; going to chow hall.
are dangerous due to preexistance
ion Chow Hall. The stairs
noticed on a general population
there was spinach on one area I
on March 5th, 6th and 7th because
tray slot stayed dirty never cleaned
and next door areas sitted or seat or

If I'm moved may be worst. Another statement Bey, said another

March 4 2026 EC - 015 - 366 21

Threat's, assaults extent

No slippers

No change of clothing, No washer, dry, nor anywhere or place to hang clothing.

EC - 015 366 24

Drug Habit

improper classification

no accomodation

Capt. asked CO Bey, to tell me am I sure because it maybe worst.

EC 015 366 69

Capt. Boodoo,

No classification

Slot time

T 50 phones

Eric Stallings - B/C - 441-25-03516 - 347-493-6714

Uneven Rations + portions on every meal inconsistent with menu

infestation of mice, Rats, cockroaches

drug habit picked up

Unable to accomodate medical conditions thats urgent

Allow inmates to mediate ~~to~~ confrontations and altercations

~~[illegible]~~ and allow violence.

non gang related members housed with gang related members

Did not accomodate pre existing conditions

Denied me Kosher when I am a [illegible] Israelite

[illegible]
B/C#2412502055
09-09 Hazen st East Elmhurst Ny, 11370




Prose

RECEIVED
OCT 14 2026
CLERK'S OFFICE
S.D.N.Y.

RECEIVED
OCT 14 2026
CLERK'S OFFICE
S.D.N.Y.

United States District court southern District of N

To: 500 Pearl st, Ny, Ny, 10007

USMP3
SDNY

SDNY PRO SE OFFICE
2026 OCT 15 AM 11: 5